[Cite as *State v. Wimpey*, 2019-Ohio-4823.]

## COURT OF APPEALS OF OHIO

### SIXTH APPELLATE DISTRICT
### COUNTY OF LUCAS

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. L-18-1262 |
| v. | : | |
| CARL W. WIMPEY, JR. | : | |
| Defendant-Appellant. | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** November 22, 2019

---

Criminal Appeal from the Lucas County Court of Common Pleas
Case No. CR-201801306

---

***Appearances:***

Brenda J. Majadalani and Evy M. Jarrett, *for appellee.*

Mayle, L.L.C., and Andrew R. Mayle, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Carl W. Wimpey, Jr. ("Wimpey"), appeals from the trial court's judgment, rendered after a jury trial, finding him guilty of felonious assault and sentencing him to seven years incarceration. For the reasons that follow, we reverse and remand.

## I. Background

{¶ 2} Wimpey was indicted on one count of murder in violation of R.C. 2903.02(B), with felonious assault as the underlying offense of violence, and one count of felonious assault in violation of R.C. 2903.11(A)(1). He pleaded not guilty and the case proceeded to trial.

{¶ 3} The evidence at trial established that on January 31, 2018, Wimpey, Khalil Moussaed ("Moussaed"), and Krystal Witfoth ("Witfoth") went to Brew Ha's, a small bar in Toledo, Ohio. Witfoth entered first and encountered Arthur Richter ("Richter"), who was sitting at the bar with his uncle, Daniel Vasquez ("Vasquez"). Weeks earlier, Witfoth had rejected Richter's sexual advances. Witfoth was aware of Richter's violent history and, upon seeing him at the bar, was concerned that he would start a fight with Wimpey and Moussaed.

{¶ 4} Shortly after Witfoth entered the bar, Richter, who was visibly agitated upon seeing her, initiated a heated verbal exchange with her. When Wimpey and Moussaed entered the bar a few minutes later, Richter called out numerous profanities, loud enough for all of them to hear, including that there were "punk a** bit*** in here," Witfoth was a "bit**," and Wimpey's group were "motherf***ers." When Wimpey asked Richter why he was acting out, Richter walked over to the pool tables, grabbed a pool stick, and waved it at Wimpey's group. At that point, Vasquez got off his bar stool and stood by Richter.

{¶ 5} As another patron restrained Richter from behind, Witfoth removed the pool stick from his grasp. Richter continued the verbal confrontation, however,

and then chest-bumped Wimpey, who grabbed Richter and threw him to the ground. Vasquez then grabbed Wimpey from behind in a bearhug; Wimpey punched him in the head several times and knocked him to the ground.

{¶ 6} In the meantime, Richter grabbed another pool stick and walked over to Wimpey. Witfoth again took the pool stick from Richter (she then left the bar), but Richter grabbed a beer bottle and advanced toward Wimpey, swinging the bottle at him in a threatening manner. Wimpey kicked at Richter and knocked him to the ground, but Vasquez again grabbed Wimpey from behind. To assist his friend, Moussaed grabbed Vasquez and threw him to the ground, causing his head to hit the floor.

{¶ 7} As the fight continued, Richter got up, and Moussaed threw him to the floor. Vasquez again approached Wimpey, who punched him and knocked him to the ground. The barmaid told Wimpey and Moussaed to leave, and they exited the bar. Richter followed them outside, however, and threw two beer bottles at Moussaed's truck.

{¶ 8} Wimpey and Moussaed then exited the truck and chased Richter back into the bar. Upon reentering the bar, Moussaed knocked Richter to the ground, and Wimpey punched Vasquez with a single punch that knocked him to the floor, unconscious. Wimpey and Moussaed again left the bar, but as they got in the truck, Richter again came out of the bar waving beer bottles at them. They backed out of the parking lot to avoid Richter and then drove away. Vasquez was transported to the hospital and died four days later.

{¶ 9} The cause of Vasquez's death was disputed at trial. The state's theory was that Vasquez died as a result of Wimpey's multiple punches to his head, and Dr. Maneesha Pandey, deputy coroner and forensic pathologist in the Lucas County Coroner's Office, testified for the state that Vasquez died as a result of a subdural hematoma caused by blunt force trauma to his head. However, Dr. Steven Rapp, the defense expert, testified that he "could say with certainty" that Wimpey's punches to Vasquez's head did not cause the subdural hematoma, and that Vasquez died as a result of a hypertensive basal ganglia bleed; *i.e.*, a stroke that was unrelated to any head trauma. Dr. Rapp testified further that even if complications from the subdural hematoma caused Vasquez's death, it was likely that the hematoma started to form after Moussaed threw Vasquez to the ground, causing his head to "bounce" on the floor, and that it was not caused by Wimpey's punches. (Tr. 596, 611, 638.)

{¶ 10} The judge instructed the jury on murder in violation of R.C. 2903.02(B), the lesser included offense of voluntary manslaughter in violation of R.C. 2903.03(A), and felonious assault in violation of R.C. 2903.11(A)(1). The judge refused to instruct the jury on simple assault as a lesser included offense of felonious assault, as requested by Wimpey, and did not instruct the jury on aggravated assault as an inferior degree offense of felonious assault. The jury subsequently found Wimpey not guilty of murder and voluntary manslaughter, but guilty of felonious assault, a second-degree felony. The trial court sentenced him to seven years incarceration and three years mandatory postrelease control. This appeal followed.

## II. Law and Analysis

### A. Aggravated Assault

{¶ 11} Wimpey was convicted of felonious assault in violation of R.C. 2903.11(A)(1), which provides that "[n]o person shall knowingly * * * cause serious physical harm to another * * *."

{¶ 12} In his third assignment of error, Wimpey contends that the trial court committed plain error by not instructing the jury on the inferior degree offense of aggravated assault, a fourth-degree felony. Felonious assault is reduced to aggravated assault if the offender is "under the influence of sudden passion or in a sudden fit of rage * * * brought on by serious provocation occasioned by the victim." R.C. 2903.12(A); *State v. Deem*, 40 Ohio St.3d 205, 210-211, 533 N.E.2d 294 (1988).

{¶ 13} Wimpey did not request an instruction on aggravated assault nor object to its omission from the jury instructions, and thus has forfeited all but plain error. *State v. Booker*, 6th Dist. Lucas No. L-10-1140, 2013-Ohio-45, ¶ 18, citing *State v. Underwood*, 3 Ohio St.3d 12, 13, 444 N.E.2d 1332 (1983), and *State v. Lott*, 51 Ohio St.3d 160, 167, 555 N.E.2d 293 (1990). To find plain error, the defect in the trial court proceedings must be obvious and have affected the outcome of the trial. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16; Crim.R. 52(B). Notice of plain error is to be taken with the utmost caution, under extreme circumstances, and only to prevent a manifest miscarriage of justice. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 108.

**{¶ 14}** That said, "[a] criminal defendant has [a] right to expect that the trial court will give complete jury instructions on all issues raised by the evidence." *State v. Williford*, 49 Ohio St.3d 247, 251, 551 N.E.2d 1279 (1990). "An instruction on aggravated assault is appropriate when the evidence supports a conviction for felonious assault, but the assault resulted from serious provocation by the victim." *State v. Morrow*, 2d Dist. Clark No. 2002-CA-37, 2002-Ohio-6527, ¶ 8, citing *Deem* at *id*. Thus,

> [i]n a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, such that a jury could both reasonably acquit [the] defendant of felonious assault and convict [the] defendant of aggravated assault, an instruction on aggravated assault, as an inferior degree of felonious assault, *must* be given.

(Emphasis sic.) *Booker* at ¶ 25, citing *Deem* at 211; *see also State v. Koonce*, 6th Dist. Erie No. E-96-002, 1997 Ohio App. LEXIS 759, 10 (Mar. 7, 1997).

**{¶ 15}** "Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or arouse the defendant into using deadly force." *State v. Coleman*, 6th Dist. Sandusky No. S-02-041, 2005-Ohio-318, ¶ 24.

**{¶ 16}** With respect to Count 1, the trial court instructed the jury on the offense of murder. Then, after finding sufficient evidence of provocation to warrant an instruction, the trial court further instructed the jury on the lesser included offense of voluntary manslaughter. Specifically, the court instructed the jury that to find Wimpey guilty of voluntary manslaughter,

you must find beyond a reasonable doubt that * * * the Defendant knowingly, while under a sudden passion or sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim, Daniel Vasquez, that was reasonably sufficient to incite the Defendant into using deadly force, did cause the death of another.

(Tr. 835.)

{¶ 17} Having found there was sufficient evidence of provocation for the jury to consider voluntary manslaughter under Count 1, the trial court should have likewise instructed the jury on the inferior degree offense of aggravated assault under Count 2. Both Counts 1 and 2 related to the same conduct by Wimpey at Brew-Ha's, so it cannot be said that provocation was an issue solely relating to Count 1.

{¶ 18} We note that the trial court instructed the jury on self-defense. Generally, an instruction on aggravated assault is incompatible with an instruction on self-defense, such that both cannot be given together, because the legal theories underpinning each offense are incompatible (aggravated assault — rage; self-defense — fear). *State v. Cronin*, 6th Dist. Sandusky No. S-09-032, 2010-Ohio-4717, ¶ 53. Nevertheless, the Sixth District has recognized that "'where the record contains evidence from which a reasonable juror could find provocation and reject self-defense, the court must give the provocation instruction.'" *State v. Brown*, 6th Dist. Fulton No. F-14-005, 2015-Ohio-3395, ¶ 20, fn. 2, quoting *State v. Smith*, 168 Ohio App.3d 141, 2006-Ohio-3720, 858 N.E.2d 1222, ¶ 59 (1st Dist.).

{¶ 19} Here, Wimpey presented sufficient evidence of provocation such that a reasonable juror could have rejected his self-defense claim and found him not

guilty of felonious assault but guilty of aggravated assault. Because he did so, the trial court was required to give an instruction on aggravated assault. We therefore find plain error in the trial court's failure to give such an instruction.

{¶ 20} Wimpey also contends, as asserted in his first assignment of error, that the trial court erred in refusing to give an instruction under Count 2 for the lesser included offense of simple assault. Wimpey requested the instruction pursuant to R.C. 2903.13(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *."

{¶ 21} The trial court refused to give this instruction, finding that Wimpey's last punch to Vasquez rendered him unconscious, causing serious physical harm and thereby precluding an instruction on simple assault. The court stated:

> That then goes to the question of whether or not there was serious physical harm, and what is readily apparent from what happens on the videotape is from the last strike there was no movement forward. Okay? Mr. Vasquez never moved. All right?
>
> So the serious incapacity of the victim is right there, right then, which is part of the definition of serious physical harm, which is part of the definition of felonious assault.
>
> It is not that he struck him and caused injury or attempted to cause injury; it is he knowingly said he did, punched him, and that punch causes no more movement. And the testimony clearly indicates, and your expert witness does not counter this in any way, shape, or form. He never regains consciousness.
>
> That's the serious incapacity. It also includes death four days later, but it does have it right there upon connection, boom, immediate result. * * * There was no evidence presented that this was a simple assault. All the evidence shows that this was a knowing strike that caused serious physical harm.

(Tr. 754-755.)

{¶ 22} Wimpey contends that the trial court invaded the province of the jury by determining that his last punch to Vasquez, which knocked Vasquez to the floor and rendered him unconscious, caused serious physical harm. He argues that "whether he was the proximate cause of any serious physical harm, *i.e.*, Vasquez's unconsciousness and subsequent death, or whether there were other non-obvious causes is a quintessential jury issue," and that "the court below seized the jury's role by interleaving its own assessment of the evidence." (Appellant's brief, p. 11.)

{¶ 23} We disagree with Wimpey's assertion that the judge erred in not instructing the jury on simple assault. State's exhibit No. 12, surveillance video of the fight, clearly demonstrates that Wimpey's last punch rendered Vasquez unconscious. Serious physical harm includes "[a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity." R.C. 2901.01(A)(5)(c). "Being rendered unconscious, no matter how brief, qualifie[s] as a 'temporary substantial incapacity,' which satisfie[s] the serious physical harm requirement." *State v. Spaulding*, 2017-Ohio-7993, 98 N.E.3d 1057, ¶ 13 (6th Dist.). *See also State v. McSwain*, 8th Dist. Cuyahoga No. 83394, 2004-Ohio-3292, ¶ 29 ("Unconsciousness is a state of temporary, substantial incapacity sufficient to constitute serious physical harm.")

{¶ 24} Despite Wimpey's argument, there was no evidence that Vasquez's *unconsciousness* was due to anything other than Wimpey's punch. Dr. Rapp testified that Vasquez's *death* was not caused by Wimpey's punches, but he offered no testimony to rebut the evidence that Wimpey punched Vasquez and knocked him

to the floor unconscious.  In fact, Dr. Rapp conceded on cross-examination that "he [Vasquez] was struck with his [Wimpey's] left hand, not with enough force or direction that I think could tear veins that can lead to a subdural hematoma, *but probably enough to cause him to lose consciousness momentarily*."  (Emphasis added.)  (Tr. 641.)

{¶ 25} '"An instruction on a lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser included offense."' *State v. Burks*, 6th Dist. Lucas Nos. L-05-1346 and L-05-1347, 2007-Ohio-3562, ¶ 13, quoting *State v. Carter*, 89 Ohio St.3d 593, 600, 734 N.E.2d 345 (2000).  '"Even where the defendant offers some evidence through his own testimony supporting a lesser included offense, he is still not entitled to an instruction on that offense if the totality of the evidence does not reasonably support an acquittal on the greater offense and a conviction on the lesser offense."' *Id*. at ¶ 23, quoting *State v. Neely*, 161 Ohio App.3d 99, 2005-Ohio-2342, 829 N.E.2d 718, ¶ 46 (1st Dist.).  Here, the totality of the evidence did not support an instruction on simple assault, and, accordingly, the trial court did not err in not giving such an instruction.

{¶ 26} Wimpey's first assignment of error is overruled.  The third assignment of error is sustained; his conviction for felonious assault is reversed, and the matter is remanded for a new trial on Count 2, felonious assault.  In light of our resolution of the third assignment of error, Wimpey's second, fourth, fifth, and sixth assignments of error, in which he challenges the jury instructions on flight and self-

defense, the effectiveness of his counsel, and his sentence, are rendered moot. App.R. 12(A)(1)(c).

{¶ 27} Judgment reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

KATHLEEN ANN KEOUGH, JUDGE*

MARY J. BOYLE, P.J.*, and
LARRY A. JONES, SR., J.*, CONCUR

*(Sitting by assignment:  Judges of the Eighth District Court of Appeals)