[Cite as *State v. Richter*, 2019-Ohio-5422.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-18-1241

      Appellee                               Trial Court No. CR0201802154

v.

Arthur N. Richter                              **DECISION AND JUDGMENT**

      Appellant                             Decided:  December 31, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellee.

Neil S. McElroy, for appellant.

* * * * *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} Appellant, Arthur Richter, appeals the judgment of the Lucas County Court of Common Pleas, sentencing him to an indefinite prison term of 15 years to life after a jury found him guilty of one count of complicity to murder and one count of inciting to violence.

## A. Facts and Procedural Background

{¶ 2} The facts of this case are not in dispute. On January 31, 2018, a bar fight took place at Brew Ha's, a bar located in Toledo, Ohio. The fight was captured by video surveillance, and the resulting video was played for the jury at trial. A review of the video reveals that appellant and his uncle, Daniel Vasquez, were having drinks together at Brew Ha's when a female identified at trial as Krystal Witforth walked into the bar. According to trial testimony, Witforth came to the bar with Carl Wimpey and Khalil Moussaed. Wimpey and Moussaed entered the bar after Witforth.

{¶ 3} After entering the bar, Witforth greeted appellant, and a verbal confrontation ensued. According to Witforth's testimony at trial, appellant began to call her names because she had not responded to his sexual advances. After the confrontation ended, appellant became belligerent, and loudly stated that the bar was "full of a bunch of punk ass bitches." This comment prompted an argument between Wimpey and appellant. Appellant, who was in a sling as a result of a prior shoulder surgery, grabbed a nearby cue stick and began to threaten Wimpey. In an attempt to prevent a fight, Witforth removed the cue stick from appellant.

{¶ 4} Thereafter, Wimpey and appellant began to fight. Vasquez and Moussaed, without prompting from appellant, eventually joined the fight. After subduing appellant and Vasquez, Wimpey and Moussaed exited the bar and headed for Moussaed's truck. Appellant quickly gathered two beer bottles and made his way into the parking lot. The video surveillance reveals that appellant began yelling at Wimpey and Moussaed.

2.

Shortly thereafter, appellant threw the two beer bottles at Moussaed's truck, prompting Wimpey and Moussaed to exit the truck and pursue appellant back into the bar.

{¶ 5} Once inside the bar, appellant grabbed the entrance door and attempted to prevent Wimpey and Moussaed from reentering. Wimpey and Moussaed overpowered appellant and forced their way back into the bar, where the fight resumed. Shortly thereafter, Wimpey landed a punch to Vasquez's head, which caused Vasquez to fall to the floor. At this point, the fight ended and Wimpey and Moussaed departed. Tragically, Vasquez did not recover from his injuries, and he died several days later.

{¶ 6} As a result of the foregoing, appellant was indicted on March 19, 2018, and charged in case No. CR0201801477 with one count of inciting to violence in violation of R.C. 2917.01(A)(2) and (B), a felony of the third degree.[1] After appellant entered a plea of not guilty, the matter proceeded through pretrial discovery and plea negotiations. Following unsuccessful plea negotiations, the state filed a second indictment on June 25, 2018, charging appellant in case No. CR0201802154 with one count of complicity in the commission of murder in violation of R.C. 2923.03(A)(2), 2903.02(B), and 2929.02, a

---

[1] For his part, Wimpey was indicted on one count of felonious assault and one count of felony murder. Following a jury trial, Wimpey was found guilty of felonious assault, but was acquitted of murder and the lesser offense of voluntary manslaughter. We recently reversed Wimpey's conviction for felonious assault and remanded the matter for a new trial on that charge. *State v. Wimpey*, 6th Dist. Lucas No. L-18-1262, 2019-Ohio-4823, ¶ 26.

3.

felony of the first degree, along with one count of inciting to violence in violation of R.C. 2917.01(A)(2) and (B), a felony of the third degree.[2]

{¶ 7} On September 17, 2018, the matter proceeded to a two-day jury trial, during which the state called five witnesses. On the morning of the second day of trial, the state indicated its request for a jury instruction regarding the lesser-included offense of complicity to involuntary manslaughter. After the close of evidence, the court discussed the requested instruction with the state and defense counsel, who indicated that he had no objection to the involuntary manslaughter instruction.

{¶ 8} Once the state rested, defense counsel moved the trial court for an acquittal under Crim.R. 29, arguing that the state had failed to introduce sufficient evidence to support its charges against appellant. With regard to the charge of complicity, defense counsel asserted that the state had failed to show that appellant shared Wimpey's criminal intent, or that appellant aided and abetted Wimpey in his commission of the felonious assault that led to Vasquez's death. As to the charge for inciting to violence, defense counsel noted that appellant and Wimpey were mutual combatants, and argued that, as such, appellant did not incite Wimpey to violence against Vasquez, who joined the fight of his own accord.

{¶ 9} In responding to appellant's argument regarding the charge for complicity, the state relied exclusively upon a theory of proximate cause articulated in *State v. Mills*,

---

[2] On July 25, 2018, the state entered a nolle prosequi in case No. CR0201801477.

5th Dist. Richland No. 10CA119, 2011-Ohio-5793. In essence, the state argued that appellant was responsible for the natural and foreseeable consequences of his initiation of a violent confrontation with Wimpey, which included Vasquez predictably coming to his aid and ultimately suffering serious physical injuries in the process.

{¶ 10} Upon consideration of the parties' arguments, the trial court denied appellant's Crim.R. 29 motion. In denying the motion, the trial court determined that the state's evidence demonstrated that appellant aided and abetted Wimpey by inciting him to commit the act of violence that led to Vasquez's death. The court found that appellant's act of throwing two beer bottles at Moussaed's truck "incited the final act of the case here where Mr. Wimpey reentered the bar, had direct contact with the parties and then punched Mr. Vasquez, and as a result Mr. Vasquez fell to the floor and died as a result of those injuries."

{¶ 11} Thereafter, the trial court informed appellant of his right to testify. Appellant indicated that he did not wish to testify, and defense counsel rested without presenting any witnesses. Defense counsel renewed appellant's Crim.R. 29 motion, which was denied by the trial court.

{¶ 12} The matter then moved to closing arguments. In the state's closing arguments, the prosecutor stated the following with regard to the charge of complicity:

Now this is a completely different type of complicity because we're not alleging that Mr. Richter and Mr. Wimpey are acting in concert with one another, quite the opposite. They're on opposing teams. They don't

5.

like each other. They are fighting each other. But that does not mean that Mr. Richter is not capable of aiding and abetting Mr. Wimpey in committing the criminal offense of murder.

So let's look at aid or abet. To aid is to help, assist or strengthen by definition. Abet. To encourage, counsel, incite or assist. There's that word incite. Where else do we see that word incite? It's in the indictment. It's what Mr. Richter is charged with. Incite to violence. Aiding and abetting. And in the jury instructions you get a definition of aiding or abetting which states basically the same thing, the defendant is guilty of complicity by aiding and abetting. * * *

So we're going to look at conduct before the offense was committed and conduct after the offense was committed. All right. Inciting. He's coming after Mr. Wimpey with a pool stick. Sure, he doesn't get a chance to use them. * * * But Mr. Richter still challenges Mr. Wimpey on another occasion inside the bar with a beer bottle. Again, approaches him. This is conduct that is going on that leads to the complicity angle. He's inciting.

After the initial set of altercations are finished, Mr. Wimpey and Mr. Moussaed exit the bar. What does Mr. Richter do? He grabs two more beer bottles and follows them out of the bar and starts whipping them at the truck. Brings them back in. Mr. Vasquez gets hit and doesn't wake up. Now the offense of murder has been completed, but Mr. Richter is still not

finished, he's still not done, because he follows them out again with another beer bottle and he's still challenging them. * * *He's clearly inciting, encouraging. It's aiding and abetting, ladies and gentlemen, that's complicity. It's complicity of murder. And he didn't have to touch his uncle.

* * * Everything could have concluded if he would have allowed Mr. Wimpey and Mr. Moussaed to leave, but he brought them back in. They don't come back in without Arthur Richter. He's responsible for that. He's equally culpable for the injuries that were inflicted upon his uncle, that is why he is charged with complicity. Because without him, Mr. Wimpey doesn't strike Mr. Vasquez with the fatal left hook because they don't come back into the bar.

So the question is did the State of Ohio prove complicity in commission of murder? So we talked about aiding or abetting. And it's basic terms. Definition of abet means to incite. Carl Wimpey commits felonious assault on Daniel Vasquez. Daniel Vasquez dies as a proximate result of Mr. Wimpey's felonious assault. Carl Wimpey commits felonious assault on Daniel Vasquez due to inciting behavior by the defendant. To incite is to abet. Aiding and abetting equals complicity. Inciting violence equals complicity in the commission of murder. The state has proven all that. * * *

Now, the judge is also going to instruct you that if you do not find that the defendant – the state has proven beyond a reasonable doubt the offense of murder, you're going to have another option. Complicity in the commission of involuntary manslaughter which state no person shall cause the death of another as the proximate result of the offender's committing or attempting to commit a felony. * * * Felony we would ask you to consider is inciting violence.

* * *

The state submits to you, folks, that we [have] proven beyond a reasonable doubt that the defendant is guilty of complicity to murder and inciting violence. And we'd ask you to consider the complicity to murder first before you get to complicity to involuntary manslaughter.

{¶ 13} In responding to the state's closing arguments, defense counsel focused on the state's acknowledgement that appellant and Wimpey were not on "the same team." Relevant here, defense counsel stated the following during closing arguments:

As [the state] indicated that this is – they weren't on the same team. In most cases an aider and abetter will be acting in concert with the principal offender. And he gave the example of robbing a bank where one is the getaway driver and the other one goes in and commits the offense. That's not here. [Richter] was in a fight, an argument with Carl Wimpey. Now can we call it a fight? You know, [Richter] didn't strike a blow. He

had a beer bottle and he pointed it at somebody, but he didn't strike a blow. He didn't hit anybody. He probably yelled and called somebody some names, but that certainly doesn't mean he supported the conduct of Carl Wimpey. Certainly didn't assist him. He didn't encourage him. He didn't cooperate with him. He didn't advise him. And I would suggest to you that he did not incite the principal offender to commit an offense of violence against Danny Vasquez.

\* \* \*

So when you're looking at the evidence, I want you to take that into consideration, because the key is based on what you're going to see in that video, did he aid and abet Carl Wimpey? And I would suggest to you no. And that will go to both the charge of murder and the charge of involuntary manslaughter. Becomes aiding and abetting. The second count in the indictment is inciting to violence. Was he inciting Carl Wimpey to commit violence against his uncle? No. They are going to be mutual combatants and I don't think you can incite violence against yourself.

{¶ 14} Following jury instructions and deliberations, the jury found appellant guilty of complicity to murder and inciting to violence. The matter was continued for sentencing and a presentence investigation report was ordered. At sentencing, appellant was ordered to serve 30 months in prison on the inciting to violence charge, and 15 years

to life as to the complicity charge, said terms to be served concurrently. Appellant's timely appeal followed.

## B. Assignments of Error

{¶ 15} On appeal, appellant asserts the following assignments of error for our review:

I. The evidence presented at trial was insufficient to support a conviction for complicity to murder.

II. The conviction for complicity to murder was against the manifest weight of the evidence.

III. The evidence presented at trial was insufficient to support a conviction for inciting to violence.

IV. The conviction for inciting to violence was against the manifest weight of the evidence.

## II. Standard of Review

{¶ 16} In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution and determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 132. Whether there is sufficient evidence to support

10.

a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 17} In contrast, when reviewing a manifest weight of the evidence issue, we sit as a "thirteenth juror." *Id*. at 387. That is, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *Id*. Our role is to determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id*. We reverse a conviction on manifest weight grounds for only the most "exceptional case in which the evidence weighs heavily against the conviction." *Id*. at 387.

### III. Analysis

{¶ 18} In appellant's assignments of error, he argues that his convictions for complicity to murder and inciting to violence were not supported by sufficient evidence and were against the manifest weight of the evidence. We will address these convictions separately, beginning with the complicity conviction.

### A. Complicity

{¶ 19} In his first and second assignments of error, appellant challenges his conviction for complicity in the commission of murder under R.C. 2923.03(A)(2), 2903.02(B), and 2929.02, which provide, in relevant part:

R.C. 2923.03(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

11.

* * *

(2) Aid or abet another in committing the offense;

{¶ 20} According to the state, appellant abetted Wimpey in committing an offense (felony murder) by inciting Wimpey to return to the bar and reengage in the fight through the throwing of the two beer bottles at Moussaed's truck. Felony murder is defined under R.C. 2903.02(B), which provides: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."

{¶ 21} Appellant does not dispute the fact that the state's evidence establishes Wimpey's commission of a qualifying felonious assault upon Vasquez, nor does appellant contest the fact that Vasquez died as a proximate result of the felonious assault committed by Wimpey. However, appellant argues that the state's evidence is deficient as to the aiding or abetting element of the complicity statute.

{¶ 22} To establish that a defendant aided and abetted a crime, the evidence must prove that the defendant "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus. "Thus, the state must prove two criminal intents for the accomplice: first that the accomplice had the same criminal intent as the principal offender and, second, that the accomplice also intended to help the principal commit the offense."

12.

*State v. Middleton*, 6th Dist. Lucas No. L-05-1162, 2006-Ohio-6634, ¶ 14, citing *State v. Mendoza*, 137 Ohio App.3d 336, 343, 738 N.E.2d 822 (3d Dist.2000).

{¶ 23} Appellant contends that the state's evidence does not establish that he "shared the criminal intent of the principal offender." According to appellant, there is no evidence to demonstrate that he intended to help Wimpey return to the bar or cause serious physical harm to Vasquez.

{¶ 24} Having examined the record, we agree with appellant that the state has not met its burden of establishing evidence to prove that appellant acted with a shared criminal intent in this case. Indeed, there is nothing in the record to support the conclusion that appellant intended to help Wimpey commit a felonious assault on Vasquez, appellant's uncle. Moreover, the video clearly shows appellant scrambling away from Wimpey after he threw the beer bottles, attempting to flee from Wimpey and Moussaed upon their exit from the truck. Appellant further manifests an intent not to reengage with Wimpey by attempting to hold the entrance door shut in order to prevent Wimpey's reentry into the bar. Under these facts, a shared criminal intent among Wimpey and appellant is unsupportable.

{¶ 25} In *State v. Boigner*, 8th Dist. Cuyahoga No. 34514, 1976 WL 190781 (Mar. 25, 1976), the Eighth District stated: "To be convicted as an aider and abettor such person must: (1) engage in an overt act 'with a view' towards producing the result for which he is held; and (2) such person must himself possess the felonious intent that the principal possesses." *Id.* at *3, citing *Woolweaver v. State*, 50 Ohio St. 277, 288, 34 N.E.

13.

352 (1893). Additionally, in *State v. Mendoza*, the Third District interpreted the terms "aid" and "abet" as requiring a showing that the defendant directed his conduct toward the goal of the principal's criminal offense. *Mendoza* at 344-45.

{¶ 26} In this case, appellant's act of throwing the beer bottles at Moussaed's truck was not done with a view toward Wimpey returning to the bar and assaulting Vasquez, as appellant's attempt to flee from Wimpey and Moussaed demonstrates that appellant did not wish to continue the fight.

{¶ 27} The state confuses the shared criminal intent element by focusing exclusively upon a proximate cause theory that would impose accomplice liability upon a defendant for any criminal acts committed by another that are the natural and foreseeable consequence of the defendant's conduct. The state relies upon *State v. Mills*, 5th Dist. Richland No. 10CA119, 2011-Ohio-5793, in support of its proximate cause argument. A careful reading of that case, however, does not support the state's argument here.

{¶ 28} In *Mills*, the defendant's father was killed by the defendant's son, Kameron, after being struck with a board during a fight between his family and his neighbors, the Edwards family. Defendant's father attempted to prevent the interfamily fight. In its decision, the Fifth District recounted the facts that preceded the fight, as follows:

> The original disagreement with name calling and rock throwing was between Junior and appellant's boys. The boys went home and returned with appellant as their leader and undeniably the aggressor. As the cited

evidence establishes, appellant came prepared for a fight. He flew through the field and confronted the Edwards Family with his two sons, each armed with a board. Appellant was holding his walking stick. He sized-up the Edwards Family and taunted Junior. He ignored his father's pleadings not to fight and did not tell his sons not to fight. By his actions, appellant set forth in motion a sequence of events with foreseeable consequences that he should have known would result in someone's death. Jim's death was "natural and logical in that it was within the scope of the risk created by his [appellant's] conduct." Kameron striking his grandfather with the board and killing him was not extraordinary or surprising given the facts cited supra.

Disregarding any character evidence presented, the overall tenor of the altercation was that appellant was the sole person in charge, initiated the return to the Edwards's property, and did nothing to stop his boys from participating in the melee which ultimately resulted in Jim's death. (Citations omitted).

*Id*. at ¶ 94-95.

{¶ 29} Having carefully reviewed the decision, we find that *Mills* is distinguishable from this case, because in *Mills* the principal's (Kameron) interests and the defendant's interests were aligned; the defendant wanted to help the principal

complete the conduct that led to the grandfather's death, as demonstrated by the following testimony referenced in the decision:

"[The defendant] got up in his [Jim's] face and started shaking a walking stick it looked like into his face. He started saying, 'Come on, hit me old man. I'm tired of you standing up for [the neighbors] all the time.' He said, 'Hit me old man,' that's what I remember from that point.

Then after he [Jim] walked up, and he went to grab Kameron's two by four from him, and in the process, Kameron, when he did it, Kameron jerked back real hard like that and hit Jim."

*Id.* at ¶ 49-50.

{¶ 30} By contrast, in this case, appellant's interests and Wimpey's (the principal) interests were opposed to one another at all times. There was no evidence introduced from which one could infer that appellant wanted Wimpey to harm Vasquez. The fact that appellant's conduct led to Vasquez's death is relevant to the charge of felonious assault and felony murder that underpins the complicity charge in this case. *See State v. Spates*, 8th Dist. Cuyahoga No. 100933, 2015-Ohio-1014, ¶ 51-62, (applying causation principles to charge of felonious assault), and *State v. Catron*, 8th Dist. Cuyahoga No. 101789, 2015-Ohio-2697, ¶ 15-16 (applying doctrine of proximate cause while examining the sufficiency of the state's evidence to support a charge of felony murder). As noted above, appellant does not contest the notion that Wimpey committed felony

murder. However, the state was required to do more than merely establish Wimpey's commission of felony murder.

{¶ 31} By charging appellant with *complicity* to murder, the state committed itself to establishing, in addition to the elements of felony murder, that appellant and Wimpey were *accomplices*. Under current law in Ohio, the fact that appellant's conduct was a proximate cause of Vasquez's death does not establish the accomplice relationship that was central to the state's case as charged. Stated differently, proximate cause is but one step in the process of establishing accomplice liability in this case; such a showing does not vitiate the need to *additionally* establish a shared criminal intent that would form the basis for an accomplice relationship between appellant, as accomplice, and Wimpey, as principal. While a showing of proximate cause may be sufficient for civil liability, the elements are different in a criminal case and introducing evidence which would be sufficient to establish civil liability does not equate to establishing the elements for criminal aiding and abetting. This is because the law of complicity requires the state to establish shared criminal intent of the principal, which in this case was Wimpey's intent to throw a punch and cause harm to Vasquez.

{¶ 32} The record is devoid of any evidence to show that appellant acted with a desire to assist Wimpey in assaulting Vasquez. There is no evidence to demonstrate the existence of an accomplice relationship between appellant and Wimpey, and thus no shared criminal intent in this case. Because shared criminal intent is an element to the state's charge of complicity in this case, we conclude that the state's evidence is

17.

insufficient to support appellant's conviction for complicity premised upon aiding and abetting. Accordingly, appellant's first assignment of error is well-taken.

{¶ 33} Our determination that appellant's complicity conviction was not supported by sufficient evidence renders appellant's manifest argument raised in his second assignment of error moot. Appellant's conviction for complicity in the commission of murder must be vacated as a consequence of our determination that it was not supported by sufficient evidence.

## B. Inciting to Violence

{¶ 34} In his third and fourth assignments of error, appellant challenges his conviction for inciting to violence under R.C. 2917.01(A)(2) and (B), which provides:

(A) No person shall knowingly engage in conduct designed to urge or incite another to commit any offense of violence, when either of the following apply:

* * *

(2) The conduct proximately results in the commission of any offense of violence.

(B) Whoever violates this section is guilty of inciting to violence. If the offense of violence that the other person is being urged or incited to commit is a misdemeanor, inciting to violence is a misdemeanor of the first degree. If the offense of violence that the other person is being urged or

incited to commit is a felony, inciting to violence is a felony of the third degree.

{¶ 35} Like the complicity charge, the charge for inciting to violence pertains to appellant's act of throwing two beer bottles at Moussaed's truck. Thus, the crux of our analysis centers on whether such conduct was "designed to urge or incite another to commit any offense of violence." R.C. 2917.01(A).

{¶ 36} In its brief in support of appellant's inciting conviction, the state asserts that appellant's conduct was "definitely designed to incite Wimpey to commit an act of violence. * * * Richter's act of throwing two beer bottles at [Moussaed's] truck, after Wimpey had left the bar and had withdrawn from the conflict, shows his intent that the two continue 'drubbing.'"

{¶ 37} We note at the outset that this case presents a fact pattern not typically associated with cases involving charges of inciting to violence under R.C. 2917.01. In fact, our review of the case law construing R.C. 2917.01 reveals only one case, *State v. Turner*, 8th Dist. Cuyahoga No. 88489, 2007-Ohio-5449, in which the individual committing the act of violence was allegedly incited to do so by one with whom his interests were not aligned. In that case, Turner and his friend, William Forrest, approached another individual, Aric Jackson, and began making racial comments toward him at a bar in Cleveland, Ohio. When Jackson got up from his seat, Turner or Forrest pushed Jackson into a corner and "got '[r]ight up in his face.'" *Id.* at ¶ 9. Jackson then

19.

responded by throwing punches at Turner and Forrest, the first of which knocked Turner out.

{¶ 38} Following the incident, Turner was charged with inciting to violence and assault. At the close of the state's evidence, Turner moved for acquittal under Crim.R. 29 with respect to both charges. The trial court granted Turner's motion as to the assault charge, but denied the motion as to the charge for inciting to violence. At the close of evidence, the jury returned a guilty verdict on the charge for inciting to violence, and Turner appealed.

{¶ 39} On appeal, Turner contended that his conviction for inciting to violence was not based upon sufficient evidence, because "he did not urge 'another' person to commit an offense of violence as statutorily defined, because a conviction cannot stand when the person incited to violence is the victim." *Id*. at ¶ 84. Initially, the court noted that this was a matter of first impression in Ohio as there were no other cases in which a defendant had been convicted of inciting to violence where "the other person is not incited to act in a violent fashion against some third party, but against the very person who is alleged to have incited him." *Id*.

{¶ 40} As it considered the merits of appellant's argument, the Eighth District examined the language of R.C. 2917.01 and determined:

The statute does not mandate that the other person must commit the "offense of violence" against a third party. Moreover, under R.C. 2917.01, the conduct must incite another to commit any offense of violence. Thus,

at first glance, it would appear to encompass the situation here; i.e., Turner incited Jackson to commit assault against Turner. Jackson is "another" person and assault is "any offense of violence."

Besides assault, however, none of the other "offenses of violence" would work the same way-if committed against the inciter. For example, could Turner have incited Jackson to rape him? Murder him? Stalk him? Thus, the statute is ambiguous and the legislative intent is not apparent from the language of it. Therefore, we must look to other rules of statutory construction to determine the intent. (Emphasis sic.)

*Turner* at ¶ 87-88.

{¶ 41} The court went on to examine the Committee Comments to R.C. 2917.01 to ascertain the legislative intent behind the statute, noting that the comments "repeatedly refer to 'mob violence,' 'mob dynamics,' 'speaker,' and 'audience,'" *id.* at ¶ 94, and concluding that "the comments show the legislature did not intend R.C. 2917.01 to apply to the circumstances in the case at bar, where Turner incited Jackson to fight Turner. Jackson would not be 'another' person as envisioned by the legislature when it enacted R.C. 2917.01." *Id*. at ¶ 98.

{¶ 42} After finding that inciting to violence was not a plausible charge in cases in which the defendant incited the aggressor to commit an act of violence against the defendant, the Eighth District went on to identify several cases involving the "common scenario" in which a charge of inciting to violence would be appropriate. In all of the

cases identified by the court in *Turner*, the defendant was found guilty of inciting to violence for "inciting one or more persons to commit an act of violence against a third party (or parties)." *Id*. at ¶ 100, citing *State v. Smith*, 8th Dist. Cuyahoga No. 61570, 1992 WL 309371 (Oct. 22, 1992) (police arrived at a scene where shots had been reported; a crowd of approximately fifteen to twenty young males had gathered; defendant shouted to the crowd, "'[w]e ought to jump these guys. They on our block now * * * and [w]e ought to shoot one of these motherfuckers. I got my 9.'"); *State v. Brandon*, 2d Dist. Greene No. 88CA57, 1989 WL 72232 (June 28, 1989) (defendant told five of his friends that "'some Dayton guys were up on campus looking for him,' and 'had bats and * * * might have guns.'" Defendant also said, "'grab the UZI' and 'we're going over to campus to meet those guys * * * [a]re you all with me or what * * * we can't get punked out.'"); *State v. Cummings*, 11th Dist. Lake No. 97-T-0068, 1998 WL 682388 (Sept. 30, 1998) (defendant yelled to a crowd of about thirty people during his cousin's arrest: "'you fucking cops, you can't do this. You are always picking on us. We got numbers * * * there's more of us than them. We can take him. We can get the white man because there's more of us now.'" Defendant also yelled at one of the cops, "how do you feel now, we have got you out-numbered."); *State v. Little*, 8th Dist. Cuyahoga No. 68003, 1995 WL 643720 (Nov. 2, 1995) (police arrived at scene to break up an unruly party; defendant goaded thirty to fifty people that they could "get them white honkey mother f-kers right now. There are more of us than them. Let's get them.").

22.

{¶ 43} The court followed the logic of the aforementioned cases and found that Turner could not be convicted of inciting to violence because he incited Jackson to commit an offense of violence against himself rather than a third party. *Id.* at ¶ 101. Ultimately, the court found that "this case was not the type of case intended by the legislature when it enacted R.C. 2917.01." *Id.* Rather, the court found that a charge of disorderly conduct under R.C. 2917.11 would have fit the facts more appropriately. In so finding, the court looked to the Committee Comments to R.C. 2917.11, and found that they included examples of conduct that would constitute disorderly conduct, including "'making remarks calculated to annoy their target into taking a swing at his tormentor.'" *Id.* at ¶ 108. Thus, the court stated that "if Turner incited Jackson, it is our view that he did so within the sphere of R.C. 2917.11. Turner did not, however, incite 'another' as intended within the realm of R.C. 2917.01.'" *Id.* at ¶ 110.

{¶ 44} Our research reveals that *Turner* is not relied upon in any other decisions, and is indeed the only case in Ohio examining a charge of inciting to violence in which the defendant is alleged to have incited violence against himself. Although we are not bound by *Turner*, its sound logic and reasoning compel us to find its conclusion that inciting to violence is limited to instances in which one incites another to commit an offense of violence against a third party to be based on sound reasoning. Thus, we will follow *Turner*.

{¶ 45} Similar to Turner, appellant in the present case was charged with inciting to violence after provoking violence against himself. The state does not suggest that

appellant urged or incited Wimpey to commit an offense of violence against Vasquez, and the facts of this case do not support such an inference. Although Vasquez happened to become embroiled in the fight that resumed after appellant threw beer bottles at Moussaed's truck, there is nothing in the record to support the notion that appellant's conduct was *designed* to urge or incite Wimpey to commit an offense of violence against Vasquez. Therefore, upon application of the principles espoused in *Turner* regarding the parameters of the offense of inciting to violence under R.C. 2917.01, we find that appellant's conviction for inciting to violence was not supported by sufficient evidence.

{¶ 46} Although the net effect of the foregoing analysis is the vacation of appellant's convictions, we nonetheless find appellant's conduct in this case to be troubling and likely criminally actionable. For example, appellant's conduct would fit squarely within the parameters of disorderly conduct. *See Turner*, *supra*, 8th Dist. Cuyahoga No. 88489, 2007-Ohio-5449, at ¶ 106-110. However, our obligation here is not to determine whether there is sufficient evidence to establish that appellant committed *some* crime based on his actions, but rather, whether the state has established by sufficient evidence that his actions constituted the crimes for which the grand jury found probable cause. Thus, our resolution of the assignments of error in appellant's favor merely reflects our determination that the state has failed to introduce sufficient evidence to support a conviction for the crimes with which appellant was charged.

{¶ 47} Accordingly, appellant's third assignment of error is well-taken. Our resolution of appellant's sufficiency argument with respect to the inciting to violence

24.

conviction renders appellant's fourth assignment of error moot. Because appellant's conviction for inciting to violence was not supported by sufficient evidence, it must be vacated.

## IV. Conclusion

{¶ 48} In light of the foregoing, the judgment of the Lucas County Court of Common Pleas is hereby reversed, and appellant's convictions for complicity to murder and inciting to violence are vacated. Appellant is ordered discharged, and the state is hereby ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed
and vacated.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

Thomas J. Osowik, J. _____

Gene A. Zmuda, J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.