[Cite as *State v. Yarbrough*, 2012-Ohio-2153.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-110355 |
| | | TRIAL NO. B-0905324 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| CHAUNCEY YARBROUGH, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  May 16, 2012

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*William F. Oswall, Jr.,* for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

**SYLVIA S. HENDON, Judge.**

{¶1}     Following a bench trial, defendant-appellant Chauncey Yarbrough was found guilty of two counts of murder with accompanying weapon specifications, two counts of carrying a concealed weapon, and having a weapon while under disability.  The trial court sentenced Yarbrough to an aggregate term of 19 years' to life imprisonment for these offenses.

{¶2}     Yarbrough's convictions stemmed from a shooting that occurred outside Annie's nightclub in the early morning hours of July 27, 2009.  Marcus Mitchell and Daunte Phillips were shot and killed in the parking lot of Annie's as they left the club.  Immediately prior to the shooting, Yarbrough and Mitchell had been engaged in an argument.  During the altercation, Yarbrough fired his weapon several times at Mitchell.  Two shots struck Mitchell, and he died from the resulting injuries.  A stray bullet struck and killed Daunte Phillips, a bystander who had not been involved in the altercation between Yarbrough and Mitchell.

{¶3}     Yarbrough now appeals from the trial court's judgment, raising six assignments of error for our review.  Because we find no merit to Yarbrough's arguments, we affirm the judgment of the trial court.

### Manifest Weight

{¶4}     In his first assignment of error, Yarbrough argues that his conviction for the murder of Marcus Mitchell was against the manifest weight of the evidence.  When reviewing the manifest weight of the evidence, an appellate court must weigh all evidence and reasonable inferences and consider the credibility of the witnesses to determine whether the trier of fact lost its way and created a manifest miscarriage

of justice such that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶5}   Yarbrough was convicted of murder under R.C. 2903.02(A), which provides that "[n]o person shall purposely cause the death of another." Yarbrough admits to shooting Mitchell, but asserts that the evidence demonstrated that he had acted in self-defense. A defendant is entitled to rely on the affirmative defense of self-defense when he establishes "(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger." *State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997). A defendant bears the burden of proving each element of self-defense by a preponderance of the evidence. *State v. Miller*, 1st Dist. No. C-070691, 2008-Ohio-5899, ¶ 15.

{¶6}   The state presented testimony from Willie Smith, a friend of Mitchell's who had witnessed his murder. Prior to the shooting, Mitchell, who went by the nickname of "Murder," had exited from Annie's nightclub and had told Smith that "this motherfucker think I'm playing with him. I'm opting to show him I ain't playing with him." Mitchell then crossed the street and retrieved something from his car, which Smith did not view but believed to be a gun. Smith cautioned Mitchell against engaging in any sort of confrontation, but Mitchell ignored his friend's advice and approached Yarbrough in the parking lot. As Yarbrough and his friends began to walk away, Mitchell said to Yarbrough "you think I'm playing whichu?" Yarbrough responded by likewise challenging Mitchell, "you think I'm playing whichu?" He then

immediately pulled a gun out of his right pocket and fired repeatedly at Mitchell. Smith testified that he had never seen Mitchell expose a gun during the altercation, and that Mitchell had tried to back up when Yarbrough had revealed his weapon.

{¶7}   Cincinnati Police Officer Sabreen Williams had been working an off-duty detail at Annie's on the night of the shooting. She testified that, shortly after the nightclub let out for the evening, she had heard approximately seven gunshots that came from the same general area. Responding to the shots, she found Mitchell face down on the ground with no pulse. After rolling Mitchell over, Officer Williams discovered a weapon on him. Cincinnati Police Detective Kurt Ballman confirmed that a weapon had been found on Mitchell. Detective Ballman testified that Mitchell's weapon had been holstered deep inside the right side of his pants.

{¶8}   Marvin Gates had been at Annie's nightclub on the night of the shooting with his friend Daunte Phillips, who was struck by a stray bullet. Gates testified that he and Phillips had deliberately attempted to avoid Yarbrough in the parking lot that evening because they had seen him standing at the top of a hill flexing a weapon behind his back as Mitchell walked towards him.

{¶9}   At trial, Yarbrough testified that he carried a weapon for protection, even though he was not legally permitted to do so because of a prior conviction. He did so because he worked as a security guard at several area clubs and often angered people by enforcing the club rules. He further stated that he had been robbed twice at gun point and that several of his friends had been murdered.

{¶10}   Yarbrough testified that he had gone to Annie's nightclub on the night of the shooting with his friends Midnight, 80, and Kenny. As he waited in the parking lot, Mitchell approached him with a crazy look on his face, while shouting

"Fuck you whore-ass nigga, I ain't perpin'. You know I ain't playing whichu." Yarbrough testified that he saw Mitchell make a reaching motion toward his pants with his right hand. Fearful that Mitchell was in the process of retrieving a weapon, Yarbrough pulled out his own weapon and fired approximately four shots at Mitchell. He explained that he chose to fire at Mitchell rather than retreat, because he had feared that he would be shot in the back if he had attempted to run. On cross-examination, Yarbrough conceded that he had never actually seen a weapon in Mitchell's possession.

{¶11} Andre Whaley, also known as "Midnight," had been with Yarbrough at Annie's nightclub. Whaley witnessed Yarbrough and Mitchell arguing, and then heard Mitchell say "Fuck these niggas." He saw Mitchell reach for his side and bend his arm, and at this same time, Whaley saw Yarbrough remove his own weapon. Whaley ducked, and then heard multiple gun shots. Whaley testified that Mitchell had a reputation as a violent person, but that he had not seen a weapon in Mitchell's possession at the time that he was shot.

{¶12} Following our review of the record, we hold that the evidence does not demonstrate that Yarbrough had a legitimate belief that he was in danger of imminent death or great bodily harm. Although Mitchell was found with a weapon in his possession, the record was devoid of evidence that Mitchell had actually produced that weapon during his confrontation with Yarbrough. Yarbrough himself conceded that he had not seen Mitchell display a weapon. Neither the statements uttered by Mitchell during the verbal altercation nor Mitchell's uncompleted reaching motion were enough to provide Yarbrough with a legitimate belief that he was in danger of death or great bodily harm. The trial court correctly concluded that

Yarbrough had failed to prove by a preponderance of the evidence that he had acted in self-defense.

{¶13} Yarbrough next argues that the record demonstrates that the trial court was not convinced of his guilt beyond a reasonable doubt. In support of his argument, he cites the length of time that it took the trial court to render a verdict, as well as an order issued by the trial court requesting the parties to research whether Yarbrough was guilty of lesser-included offenses. Yarbrough's arguments are tenuous. First, the length of time that it took the trial court to issue its decision has no bearing on the weight of the evidence supporting a conviction or the confidence of the court in its decision. The record contains no indication that the trial court engaged in anything other than a thorough deliberation of the evidence.

{¶14} Further, the trial court's order requesting the parties to research lesser-included offenses was issued following a post-trial Crim.R. 33(A) motion for a new trial filed by Yarbrough. Crim.R. 33(A) provides that "[i]f the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict or find accordingly." Rather than evince doubt in its verdict, the trial court's order demonstrates that it thoroughly considered Yarbrough's motion for a new trial, but ultimately determined that it was without merit. Yarbrough's conviction for the murder of Mitchell was not against the manifest weight of the evidence, and the first assignment of error is overruled.

{¶15} In his second assignment of error, Yarbrough argues that his conviction for the murder of Daunte Phillips was against the manifest weight of the evidence. Phillips was struck by a stray bullet that missed Yarbrough's intended

victim, Marcus Mitchell. We have already determined that Yarbrough's conviction for the purposeful murder of Mitchell was supported by the manifest weight of the evidence. Under the doctrine of transferred intent, Yarbrough's conviction for the purposeful murder of Phillips was likewise supported by the weight of the evidence.

{¶16} The doctrine of transferred intent provides that "where an individual is attempting to harm one person and as a result accidentally harms another, the intent to harm the first person is transferred to the second person, and the individual attempting harm is held criminally liable as if he both intended to harm and did harm the second person." *State v. Reese*, 1st Dist. Nos. C-060576 and C-060577, 2007-Ohio-4319, ¶ 21. Here, Yarbrough's purposeful intent to kill Mitchell was transferred to Phillips.

{¶17} Yarbrough argues that the evidence fails to demonstrate that he shot Phillips, and that the deaths of Mitchell and Phillips are not related. We are not persuaded. The record contains no evidence that two separate shootings occurred. Officer Williams testified that she heard approximately seven gunshots in succession. These gunshots came from one general area, all sounded alike, and appeared to be consecutive shots from the same weapon. Marvin Gates, Phillips' companion, testified that he and Phillips had reversed course in the parking lot after viewing Yarbrough flex a weapon behind his back. Gates heard shots ring out as he and Phillips retraced their steps. Phillips immediately announced that he was hit, and collapsed to the ground.

{¶18} Firearms examiner Robert Lenhoff examined bullets recovered during the autopsy of Marcus Mitchell as well as bullet items that had been recovered near the body of Daunte Phillips. Lenhoff testified that after comparing the

7

characteristics of all bullets and bullet items, he had determined that they all were fired from the same weapon. Lenhoff further testified that the weapon found on Mitchell could not have fired any of the bullets recovered from the scene.

{¶19} Yarbrough further highlights discrepancies in the testimony from various state witnesses. But these discrepancies concerned minor issues. The witnesses were consistent in their relevant testimony that Yarbrough had shot Mitchell and that Mitchell had never produced a weapon during the altercation. Further, the trial court was in the best position to judge the credibility of these witnesses and to resolve any inconsistencies. The trial court did not lose its way and create a manifest miscarriage of justice in convicting Yarbrough of Phillips' murder. The second assignment of error is overruled.

### Ineffective Assistance

{¶20} In his third assignment of error, Yarbrough asserts that he received ineffective assistance from his trial counsel. For counsel to be deemed ineffective, the defendant must demonstrate that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant is only prejudiced if the outcome of the proceedings would have been different but for counsel's deficient performance. *Id.* at 694. When reviewing counsel's performance, this court must engage in the presumption that counsel's behavior fell within the range of reasonable professional assistance. *Id.* at 689.

{¶21} Yarbrough argues that his counsel was ineffective in focusing on the affirmative defense of self-defense with respect to Daunte Phillips and in failing to independently pursue additional evidence relating to Phillips' death. But pursuing

such a defense is a matter of trial strategy, which this court will generally refrain from second guessing. *State v. Myles*, 1st Dist. No. C-050810, 2007-Ohio-3307, ¶ 73. In this case, arguing self-defense was a sound trial strategy based on the evidence presented. Had Yarbrough been acquitted of Mitchell's murder based on self-defense, he would have likewise been acquitted of Phillips' murder.

{¶22} Yarbrough further argues that his counsel failed to effectively cross-examine both the coroner and the firearms examiner about Phillips' cause of death and the type of weapon used to shoot Phillips. We do not find that counsel's examination of these witnesses was deficient. Given the pursued strategy of self-defense and the information already elicited on direct examination, we fail to see how additional testimony from the coroner regarding Phillips would have aided Yarbrough. And the record indicates that defense counsel vigorously cross-examined the firearms examiner on the type of weapon used to fire both the bullets recovered from Mitchell's body and the bullet items found near Phillips.

{¶23} Yarbrough did not receive ineffective assistance from his trial counsel. The third assignment of error is overruled.

### *Prosecutorial Misconduct*

{¶24} In his fourth assignment of error, Yarbrough asserts that the prosecutor engaged in prosecutorial misconduct by failing to disclose material information in violation of the Confrontation Clause, Crim.R. 16, and his due process and Fifth Amendment rights. The misconduct of a prosecutor will only serve as grounds for reversal if it deprived the defendant of a fair trial. *State v. Maurer*, 15 Ohio St. 3d 239, 266, 473 N.E.2d 768 (1984).

{¶25} Yarbrough contends that the prosecutor committed misconduct by failing to disclose prior to trial the case consideration that state witness Willie Smith would receive in return for his testimony. During trial, Smith testified that he was currently incarcerated in Kentucky on assault-weapons charges, and that the prosecutor would make a recommendation to his sentencing judge in that case in return for testimony against Yarbrough. Defense counsel cross-examined Smith on the consideration that he would receive. Yarbrough now argues that this information was subject to discovery pursuant to Crim.R. 16, and that the state failed to disclose this information in violation of his constitutional rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We are not persuaded that the failure to obtain this information at an earlier time deprived Yarbrough of a fair trial. Yarbrough's counsel cross-examined Smith on this issue, and the trial court was aware that Smith stood to gain a reduced sentence in return for his testimony. The court was able to consider such information when determining Smith's credibility. *State v. O'Dell*, 45 Ohio St.3d 140, 142-143, 543 N.E.2d 1220 (1989).

{¶26} Yarbrough raises similar allegations with respect to the state's witness Marvin Gates. During trial, the prosecutor asked Gates if he was receiving any case consideration in return for his testimony against Yarbrough. Gates responded "I told you I didn't need—I didn't want you guys to help me out of my case, I can help my own case myself, me and my lawyer been doing. So I don't need no help, no idea, no case consideration." Gates stated that he was testifying because Phillips was like his brother and he couldn't see his killer walk.

{¶27} In a post-trial motion for a new trial and/or motion for judgment of acquittal, Yarbrough alleged that Gates had in fact received case consideration on

pending charges after his testimony had been given. Yarbrough attached documents to his motion purporting to demonstrate that Gates later obtained the dismissal of several pending charges and a reduction in other charges. Yarbrough alleges that the state's failure to reveal the beneficial treatment given to Gates violated his rights under the Confrontation Clause, the due process clause of the Fifth Amendment, and the progeny of case law developed from *Brady v. Maryland.*

{¶28} Yarbrough's argument is without merit. Gates testified that he neither desired nor had received case consideration in return for his testimony. And while Gates later entered into a plea deal with the state, the record contains no evidence that such a deal was granted in return for testimony against Yarbrough. This court would have to engage in pure speculation to reach such a conclusion. During trial, Gates was questioned extensively regarding any potential case consideration and his motivations for testifying. The court was made aware of Gates' relationship with the victim and Gates' desire that Phillips' killer not go unpunished. Defense counsel further elicited on cross-examination that the prosecutor had agreed to Gates' release on bond on unrelated charges prior to Yarbrough's trial. The court was again able to consider such information when assessing Gates' credibility and determining what weight to give his testimony.

{¶29} We overrule Yarbrough's fourth assignment of error because he has failed to demonstrate any improper conduct by the prosecutor that deprived him of a fair trial.

### *Jury Waiver*

{¶30} In his fifth assignment of error, Yarbrough argues that his jury waiver was not made knowingly, intelligently, or voluntarily. He contends that, had he been

made aware of the case consideration received by state's witnesses Smith and Gates, he would not have waived his right to a trial by jury.

{¶31} R.C. 2945.05 states that a defendant may waive a trial by jury, provided that the waiver is made in open court and in writing, is signed by the defendant after having an opportunity to consult with counsel, and is filed and made part of the record. The Ohio Supreme Court reiterated these requirements in *State v. Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, 872 N.E.2d 279, paragraph one of the syllabus. The record indicates that these requirements were all complied with in the present case.

{¶32} When determining whether a jury waiver was made knowingly, intelligently, and voluntarily, we must consider the circumstances at the time that the waiver was made and determine whether the mandated requirements were met. It is not possible for a defendant to know at the time that a jury waiver is executed the exact testimony that each witness will provide. An argument that a defendant's jury waiver is rendered involuntary any time surprising or previously unknown testimony is elicited at trial is simply unreasonable. Further, in our resolution of the preceding assignment of error, we have already determined that the state did not commit any improper conduct that deprived Yarbrough of a fair trial with respect to the potential case consideration received by its witnesses.

{¶33} The record demonstrates that Yarbrough executed a knowing, voluntary, and intelligent waiver of his right to a trial by jury. The fifth assignment of error is overruled.

*Motion for a New Trial*

{¶34}   In his sixth assignment of error, Yarbrough argues that the trial court erred by overruling his motion for a new trial based on newly discovered evidence. Yarbrough's alleged newly discovered evidence was the testimony of Kenneth Davis, an eyewitness to Mitchell's murder.

{¶35}   Pursuant to Crim.R. 33(A)(6), a motion for a new trial may be granted when "new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at trial."  To warrant the granting of a new trial, it must be shown that the new evidence

> (1) discloses a strong probability that it will change the result if
> a new trial is granted, (2) has been discovered since the trial,
> (3) is such as could not in the exercise of due diligence have
> been discovered before the trial, (4) is material to the issues, (5)
> is not merely cumulative to former evidence, and (6) does not
> merely impeach or contradict the former evidence.  *State v.*
> *Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus.

{¶36} Yarbrough provided an affidavit from Davis detailing the newly discovered information that Davis would provide.  According to Davis' affidavit, he witnessed the shooting death of Marcus Mitchell outside Annie's.  Davis saw Mitchell approach Yarbrough and reach for a gun during the confrontation.   Davis additionally stated that he had seen a gun located in Mitchell's pants.  The trial court denied Yarbrough's motion for a new trial.  It found that this evidence could have been discovered prior to trial with the exercise of reasonable diligence, and that the evidence would have been merely cumulative to other evidence adduced at trial.

{¶37} We review the trial court's ruling on a motion for new trial for an abuse of discretion. *Id.* at 507-508. An abuse of discretion entails more than an error in law or in judgment. Rather, it involves an unconscionable, unreasonable, or an arbitrary attitude on the part of the trial court. *Pembaur v. Leis*, 1 Ohio St. 3d 89, 91, 437 N.E.2d 1199 (1982). Here, we hold that the trial court did not abuse its discretion in denying Yarbrough's motion.

{¶38} The record indicates that, during Yarbrough's initial interview with the police, he informed them that Davis had been one of his companions at Annie's on the night of the shooting. He had further provided the police with a cellular telephone number for Davis. Given this information, we find that Davis' statement could have been discovered with the exercise of due diligence prior to trial. We further find that this evidence would merely impeach or contradict testimony provided by other witnesses. Yarbrough, Willie Smith, and Andre Whaley each testified that they had not seen a weapon on Mitchell when he was shot by Yarbrough. Davis' statement that a weapon had in fact been visible on Mitchell is in direct contradiction to the testimony of these witnesses.

{¶39} Yarbrough further argues that his motion for a new trial should have been granted because his convictions were not supported by sufficient evidence and because the prosecutor committed misconduct by failing to disclose the case consideration that two of its witnesses had received in return for their testimony. We have already determined that these arguments are meritless. We again hold that Yarbrough's convictions were supported by the sufficiency and the weight of the evidence, and that the prosecutor committed no misconduct that deprived

Yarbrough of a fair trial. The trial court did not abuse its discretion in denying Yarbrough's motion on these grounds. The sixth assignment of error is overruled.

{¶40} Having overruled Yarbrough's assignments of error, we accordingly affirm the judgment of the trial court.

Judgment affirmed.

**SUNDERMANN, P.J.,** and **FISCHER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.