**[Cite as *State v. Rice*, 2025-Ohio-2264.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                Court of Appeals No. L-24-1056

       Appellee                         Trial Court No. CR0202202608

v.

Katey Rice                              **DECISION AND JUDGMENT**

       Appellant                      Decided: June 27, 2025

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lorrie J. Rendle, Assistant Prosecuting Attorney, for appellee.

Michael H. Stahl, for appellant.

* * * * *

**ZMUDA, J.**

## I. Introduction

{¶ 1} This matter is before the court upon appeal of the judgment of the Lucas County Court of Common Pleas following a bench trial, entering conviction on the lesser offense of aggravated assault with a firearm specification, and sentencing appellant, Katey Rice, to 3 years and 6 months in prison. For the reasons that follow, we affirm the judgment.

## II. Procedural History

{¶ 2} After Rice shot her ex-boyfriend, C.F., on September 5, 2022, Rice was indicted by the grand jury on September 22, 2022, on one count of felonious assault in violation of R.C. 2903.11(A)(2) and (D), a felony of the second degree, with a firearm specification under R.C. 2941.145(A), (B), (C), and (F). The appellee, the state of Ohio, alleged that Rice did knowingly cause or attempt to cause serious physical harm to the victim, C.F., by means of a deadly weapon, the firearm.

{¶ 3} On June 21, 2023, Rice filed notice of her intent to assert self-defense based on battered woman syndrome (BWS), pursuant to R.C. 2901.06 (B), referencing her expert report authored by Dr. Jolie Brams, already provided to the state. Rice alleged that C.F. was a batterer, and her conduct in shooting him three times arose from her fear of imminent death or great bodily harm, with BWS affecting her perception at the time of the offense.

{¶ 4} On February 1, 2024, the state filed a motion in limine, seeking to exclude Dr. Brams' report, arguing Dr. Brams may only testify regarding the characteristics of a person suffering from BWS and may not testify regarding whether Rice suffered from BWS for purposes of her claim of self-defense. In support, the state relied on *State v. Haines,* 2006-Ohio-6711, a case in which the expert's opinion regarding the victim's BWS was deemed inadmissible as unduly prejudicial, where the state asserted BWS against the defendant as part of its case-in-chief. Additionally, the state argued that Brams' report "is replete with inadmissible hearsay" and the hearsay statements, if

2.

admitted, would result in unfair prejudice, confusion of the issues, or misleading of the jury pursuant to Evid.R. 403(A). In support, the state argued that Brams' report contained statements by Rice regarding "numerous, unverified, alleged specific instances of bad conduct, as well as an alleged pattern of bad conduct, by C.F." Finally, the state argued that Dr. Brams' notes regarding Rice's demeanor, developmental history, mental health concerns, and current functioning were all irrelevant to the issue of BWS and Rice's reasonable belief that she was in imminent danger for purposes of self-defense. The state did not challenge Dr. Brams' qualifications to provide expert testimony regarding BWS or seek a *Daubert* hearing to test her expertise.[1]

{¶ 5} Rice filed written opposition to the state's motion in limine. In her written response to the state's motion in limine, Rice argued that R.C. 2901.06(B) expressly permitted "expert testimony that the person suffered from [BWS]," subject to the Ohio Rules of Evidence, and that evidence establishing the cycles of a battering relationship is proper, foundational evidence of BWS. Rice argued that the state's summary challenge to

---

[1] *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993). As we noted in *State v. Lanlois,* 2013-Ohio-5177, ¶ 18 (6th Dist.), "In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 … (1993), the United States Supreme Court held that the trial court must act as a 'gatekeeper' to ensure both the relevance and reliability of expert scientific testimony before admitting it. In order to aid in determining the threshold reliability of such testimony, *Daubert* identified several factors for federal district courts to consider in addressing the issue. These factors, along with *Daubert*'s approach to the reliability issue, were later adopted by the Ohio Supreme Court in *Miller v. Bike Athletic Co.,* 80 Ohio St.3d 607, 687 N.E.2d 735 (1998), and reaffirmed in *State v. Nemeth,* 82 Ohio St.3d 202, 694 N.E.2d 1332 (1998)."

3.

the report and testimony of Dr. Brams, based on relevance and prejudice, was wholly without merit. The motion remained pending until trial.

{¶ 6} On February 5, 2024, Rice waived a jury and proceeded to a trial to the bench. The state renewed its objection to Dr. Brams' report, and after hearing the parties' argument on the matter, the trial court took the motion in limine under advisement.

{¶ 7} Prior to Dr. Brams' testimony, the trial court addressed the pending motion and permitted the parties to place argument on the record. In response to the argument, the trial court noted:

> Now, under *State v. Rizer,* [2011-Ohio-5702 (4th Dist.)], if a person charged interposes battered woman syndrome as self-defense, the expert witness may testify that the defendant suffered from battered woman syndrome as an element of that self-defense, and the defendant may introduce her statements through the expert witness.
> Now, when that happens, the door of course is open for the State of Ohio to conduct its own independent examination. The State of Ohio has declined that opportunity.

The trial court distinguished Rice's case from *Haines,* in which the person claiming BWS was the victim, and the state offered the expert testimony. *See Haines,* 2006-Ohio-6711 (permitting expert testimony on BWS as part of the state's case-in-chief to explain victim's conduct, relative to the defendant's abuse, in response to credibility challenge to victim's testimony). The trial court ultimately permitted Dr. Brams to testify regarding BWS.

{¶ 8} Trial commenced, and in the state's opening remarks, the prosecutor outlined the theory of the state's case, including a claim that Rice called C.F. back to her car

4.

before shooting him. Rice's trial counsel disputed this claim in the defense's opening remarks, stating:

> And then he came back. She never called him back. That's not in any report that I've ever seen where it says that she called him back after this activity. Do you think that would be rational to call him back?

Rice argued self-defense as to all three shots, and the state appeared to concede the first shot was justified, stating "the defendant took two shot—took this two shots too far." Rice's trial counsel also outlined the proposed expert testimony, demonstrating Rice suffered from BWS.

{¶ 9} At trial, Dr. Brams testified over the state's continuing objection, describing Rice's history of abusive relationships, her "learned helplessness," and her relationship with C.F. Based on her examination of Rice, Dr. Brams opined that Rice suffered from BWS, and BWS affected Rice's perceptions, resulting in a fear of imminent death or great bodily harm at the time of the shooting, indicating this perception existed for all three shots despite the pause between shots.

{¶ 10} In addition to Dr. Brams' testimony, both C.F. and Rice testified, providing similar versions of the shooting. Pertinent to this appeal, the parties' testimony differed as to why C.F. returned to Rice's car, after initially walking away. C.F. testified that he walked away to his own car after breaking Rice's window and only came back when Rice called him. Rice testified that she did not call C.F. back, and she did not know whether he had retrieved a weapon from his car before coming back toward her. Additionally, C.F.

5.

acknowledged in his testimony that he owned firearms and sold illicit drugs, and the evidence demonstrated that C.F. could not legally possess a firearm.

{¶ 11} Rice's trial counsel challenged C.F. on cross-examination regarding his gun possession and asked about any non-prosecution agreement with the state in return for his testimony at trial. C.F. denied any discussion with the state regarding such an agreement. After the trial adjourned for the day, Rice's counsel spoke to C.F.'s attorney and learned the state did not intend to prosecute C.F., and trial counsel objected to the lack of formal notice from the state regarding this decision. The state acknowledged speaking with C.F., but denied any formal agreement, stating it "would be highly unlikely that we would be moving forward on any kind of gun charge as this happened well over a year and a half ago" and there was little evidence to prove the charge.

{¶ 12} At trial, both C.F. and Rice indicated that the couple met when Rice purchased marijuana from C.F. and the relationship progressed from drug dealer/client to boyfriend/girlfriend quickly. At the time they met, both C.F. and Rice resided at the Miracle Manor apartments, each in their own residence. After the fire at their first apartment complex, the couple lived briefly in motels, until Rice signed a lease at the Larchmont Apartments in July, 2022. At first, C.F. lived with Rice, but in August, 2022, Rice attempted to end the relationship and used some of her insurance proceeds to pay the deposit for C.F.s' own apartment, in the same complex. C.F. acknowledged that Rice paid his apartment deposit.

6.

{¶ 13} C.F. and Rice also provided similar testimony about the argument the night before the shooting and C.F.'s repeated phone contacts during Rice's work shift, although C.F. admitted to only some "back and forth" on the phone and Rice testified to 67 separate contacts from different phone numbers, indicating C.F. used a program to disguise his phone number to bypass the block she placed on his number. C.F. admitted he used a special application to disguise his number, unrelated to Rice, to "protect myself for selling weed."

{¶ 14} Much of the incident was recorded, either through Rice's calls to 911 or on surveillance video at the apartment complex. The testimony, audio recording, and surveillance video demonstrated that C.F. approached Rice as she sat in her parked vehicle after arriving home from work, and C.F. stood at the side of Rice's car, pacing and gesturing, in an apparent confrontation. Rice called 911, and the recording captured part of the confrontation. Rice testified that C.F. wanted her to get out of the vehicle but she refused, and instead Rice attempted, without success, to access the firearm she had locked in the trunk by folding down the back seat. C.F. testified that he kicked Rice's car and broke out the back, driver's-side window. C.F. then walked away, toward his own car, because he knew the police would come once he broke the window and he needed to get rid of the marijuana in his pocket. With C.F. walking away, Rice exited her vehicle and retrieved her handgun from her trunk.

{¶ 15} Next, the video showed C.F. walking back toward Rice, and once C.F. was close to Rice, she fired the first shot that caused C.F. to fall to the ground. Rice shot C.F.

7.

a second and a third time, each shot about 30 seconds apart, and the 911 audio recorded Rice's words, including statements of fear ("if I don't kill you, you'll kill me, and "you are going to do what to my kids?") and statements of an apparently threatening nature ("I want to watch you bleed out" and "you are going to die tonight"). Finally, the video and testimony demonstrated that, after the third shot, C.F. rose and ran into Rice's apartment building. Rice briefly pursued C.F., then turned around, got back into her car, and drove away. Rice returned once police had arrived and surrendered herself to the police.

{¶ 16} At the close of testimony, the state argued that Rice's conduct relative to the second and third gunshots was not self-defense, based in part on Rice's own threatening words as she continued to shoot C.F. In turn, Rice argued that her continued shooting was based on her fear and perception of the threat C.F. posed, influenced by Rice's suffering from BWS, despite the words she shouted. At the close of argument, the trial court took the matter under advisement.

{¶ 17} On February 12, 2024, the trial court entered a general verdict, finding Rice guilty of the inferior offense of aggravated assault in violation of R.C. 2903.12, a felony of the fourth degree, along with the firearm specification pursuant to R.C. 2941.145. The trial court provided no specific findings, consistent with Crim.R. 23(C) which provides, "the court shall make a general finding." The trial court imposed a sentence of 6 months as to aggravated assault and a mandatory 3-year term as to the firearm specification, for an aggregate prison term of 3 years and 6 months. The sentence was journalized on February 13, 2024.

8.

{¶ 18} Rice filed a timely appeal of this judgment.

### III. Assignments of Error

{¶ 19} Rice asserts the following assignments of error in her appeal:

1. The trial court erred in excluding, on relevance grounds, crucial portions of expert testimony, explicitly admissible under R.C. 2901.06, to Ms. Rice's prejudice and further erred in allowing the prosecution to elicit testimony as to the "legal standard" for battered women's syndrome over objection from an expert unqualified to provide that information.

2. The trial court erred in restricting testimony based upon Evid. R. 404(B) and thereby improperly restricted the evidence that the trier of fact – the court – considered, to Ms. Rice's prejudice.

3. The conviction that the trial court entered was contrary to the manifest weight of the evidence.

4. Ms. Rice was denied due process of law when the prosecution responded to Ms. Rice's timely request for a bill of particulars with a unparticularized referral to discovery, and then brought forth an additional accusation in *opening* which was *not* in discovery and further failed to disclose a non-prosecution agreement prior to trial, nor was contrary testimony immediately corrected leading to an invalid waiver of a jury.

### IV. Analysis

{¶ 20} Rice challenges the trial court's verdict as contrary to the manifest weight of the evidence, as well as asserting the trial court's evidentiary rulings constituted reversible error. Rice also argues that the state committed prosecutorial misconduct based on the state's failure to respond to a request for a bill of particulars and the state's failure to disclose a non-prosecution agreement with the victim, with the misconduct resulting in a denial of due process and an invalid jury waiver. For ease of discussion, we address the assignments of error out of order.

9.

### A.  Discovery Issues

{¶ 21} In her fourth assignment of error, Rice argues the state failed to provide a timely bill of particulars upon request, which included notice of C.F.'s claim that Rice called him back after C.F. initially walked away from Rice's car. Rice also argues that the state failed to provide notice that it had agreed to not prosecute C.F. for being a felon in possession of a firearm. However, while Rice's trial counsel sought clarification regarding the existence of an agreement at trial, the record demonstrates that Rice did not raise these issues as a discovery dispute in the trial court, thus waiving all but plain error review on appeal.

{¶ 22} Plain error requires an obvious error that affected a substantial right, or an error that clearly affected the outcome of the trial. *State v. Yarbrough,* 2002-Ohio-2126, ¶ 108, citing *State v. Keith,* 79 Ohio St.3d 514, 518 (1997); *State v. Long,* 53 Ohio St.2d 91 (1978), paragraph two of the syllabus (additional citations omitted.). We are cautious in identifying plain error and do so only "under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Bonner,* 2024-Ohio-4717, ¶ 25 (6th Dist.), quoting *Long* at paragraph three of the syllabus.

{¶ 23} The issues raised as plain error, in this case, include the state's failure to disclose C.F.'s claim at trial that Rice called C.F. back prior to shooting him the first time and the state's failure to disclose a non-prosecution agreement with C.F. over his weapons possession. Rice argues that the first issue, C.F.'s trial testimony, resulted in an invalid waiver of her right to a jury trial. As to the non-prosecution agreement, Rice merely

10.

raises plain error. We find no basis to invalidate Rice's jury waiver based on surprising testimony, and neither issue demonstrates the "exceptional circumstances" requiring reversal for plain error.

{¶ 24} As to C.F.'s testimony, while his claim was not included in the bill of particulars provided to the defense in October 2022, Rice fails to demonstrate that this claim was required to be included in a bill of particulars, especially considering C.F.'s admission that he never provided this statement to police when he first spoke to a detective in August 2023, months after the shooting. Pursuant to Crim.R. 7(E), the state must provide a bill of particulars, but "a bill of particulars is not the same thing as discovery[.]" *State v. Haynes,* 2022-Ohio-4473, ¶ 23, citing *State v. Sellards,* 17 Ohio St.3d 169, 171 (1985). "A bill of particulars is not designed to provide the accused with specifications of evidence or to serve as a substitute for discovery." *Haynes* at ¶ 23, quoting *Sellards* at 171, citing *State v. Wilson,* 29 Ohio St.2d 203, 207 (1972). Accordingly, Rice fails to demonstrate plain error based on the state's production of the bill of particulars that did not identify C.F.'s subsequent, specific testimony.

{¶ 25} Rice also fails to demonstrate that C.F.'s subsequent claim that Rice called him back before shooting him rendered her jury waiver invalid. Rice waived her right to a jury trial as set forth by R.C. 2945.05, which requires a waiver in writing, signed by the defendant in open court, and filed in the record of the case. Rice argues her waiver was not knowingly and intelligently entered, because she did not anticipate C.F.'s claim that she called him back before firing the first shot. Rice characterizes this claim as a "key

11.

aspect" of the charge against her. The validity of her waiver, however, is determined by the circumstances at the time of waiver and whether the trial court complied with the mandatory requirements of R.C. 2945.05. *State v. Yarbrough,* 2012-Ohio-2153, ¶ 32 (1st Dist.). "An argument that a defendant's jury waiver is rendered involuntary any time surprising or previously unknown testimony is elicited at trial is simply unreasonable." *Yarbrough* at ¶ 32. Therefore, Rice fails to demonstrate an invalid jury waiver, based on C.F.'s previously unknown claim that Rice called him over before shooting him.

{¶ 26} Additionally, Rice fails to demonstrate any prejudice arising from C.F.'s surprising testimony. Based on the record, Rice's trial counsel challenged C.F.'s credibility based on his unexpected claim at trial. Although the prosecution expected C.F. to provide this specific testimony, noting C.F.'s recent claim in opening statements, Rice's trial counsel questioned C.F. as to why he never mentioned his claim to investigators or provided this statement to police, prior to his testimony in February 2024. Additionally, C.F.'s testimony included admissions that his memory of the events around the shooting was not clear, and he had "blank spaces" in his recall of the events. Finally, the state conceded at trial that the first shot fired by Rice was arguably self-defense and the state emphasized Rice was charged with felonious assault based on the second and third shots, fired by Rice after C.F. was prone and helpless on the ground. Considering this record, C.F.'s statement at trial was unexpected testimony that was neither required to be included with the bill of particulars nor a circumstance that invalidated Rice's jury

12.

waiver. Accordingly, C.F.'s trial testimony did not constitute plain error, requiring reversal.

{¶ 27} Next, Rice argues a non-prosecution agreement was reached between C.F. and the state, and the state withheld information regarding this agreement from the defense. The record does not support this claim. Instead, the record demonstrates that the state considered potential prosecution of C.F. for a weapons charge "highly unlikely" and had no formal agreement with C.F. in return for his testimony. Furthermore, Rice was not precluded from introducing evidence relative to C.F.'s illegal possession of weapons or his sale of illicit drugs. Based on the record, therefore, the state did not withhold information from the defense, Rice had actual knowledge of C.F.'s activities and was permitted to inquire on cross-examination, including raising the issue of the state's decision not to prosecute C.F. for his criminal activities. Rice's claim of plain error, accordingly, is without merit, and Rice's fourth assignment of error is not well-taken.

### B. Evidentiary Rulings

{¶ 28} In her first and second assignments of error, Rice argues that the trial court erred in excluding portions of the expert testimony on relevance grounds and further erred in permitting the prosecutor to question Dr. Brams on the "legal standard" for BWS. Rice also argues the trial court improperly excluded evidence of C.F.'s prior juvenile conviction and evidence of C.F.'s drinking. The record, however, demonstrates the trial court excluded very little, permitting questioning and testimony with the caveat that the court would only consider proper testimony. Of the testimony affirmatively excluded by

13.

the trial court, moreover, there is little to support Rice's argument regarding reversible error.

{¶ 29} Rice waived her right to have a jury trial and agreed to a trial to the bench. It is well-settled law that a court, in conducting a bench trial, considers only the relevant, material, and competent evidence in reaching its judgment "unless it affirmatively appears to the contrary" within the record. *State v. Brinkman,* 2022-Ohio-2550, ¶ 32, citing *State v. Thomas,* 2002-Ohio-6624, ¶ 25-27. Rice cites to nothing in the record demonstrating the trial court affirmatively considered inadmissible evidence, and the trial court affirmatively stated that it would consider only proper evidence in reaching a verdict. The trial court entered a general verdict, consistent with Crim.R. 23(C), and provided no specific findings on the record.

{¶ 30} At trial, the prosecution attempted to exclude Dr. Brams' diagnosis that Rice suffered from BWS and sought to limit testimony regarding Rice's history of abuse, in her relationship with C.F. and her relationships with family and prior partners. The trial court admitted almost all this testimony, once Dr. Brams established the relevance of a patient's history in diagnosing BWS. In overruling the state's motion to exclude the expert testimony, the trial court correctly noted the applicable law permitting this testimony and distinguished the state's authority that pertained to the use of BWS testimony by the state and not by a defendant claiming self-defense based on BWS.

{¶ 31} The purpose of expert testimony regarding BWS is to assist the trier of fact in understanding BWS and in determining whether the defendant "had reasonable

14.

grounds for an honest belief that she was in imminent danger when considering the issue of self-defense." *State v. Koss,* 49 Ohio St.3d 213, 216 (1990). "Thus, admission of expert testimony regarding [BWS] does not establish a new defense or justification[,]" but the evidence demonstrating a history of physical abuse at the hands of the abuser is pertinent "only as it contributes to the defendant's state of mind" at the time of the claimed self-defense, "in that it formed the basis for the woman's perception of being in imminent danger of severe bodily harm or death at the hands of her partner." *Koss* at 217.[2]

{¶ 32} In challenging the expert testimony, the state focused heavily on the "legal standard" in questioning Dr. Brams, and Dr. Brams acknowledged that Ohio law required "a cycle of abuse and violence" that repeated and included "escalation into a violent act and the tensions involved. The actual act itself and then the resolution." Dr. Brams' testimony included Rice's prior relationships in determining Rice suffered from BWS. The state argued that past abusive relationships may not be considered in determining Rice's honest belief that she was in imminent danger for purposes of self-defense. This issue is not before us on appeal, however, as the trial court made no affirmative finding regarding Dr. Brams' conclusions but instead signaled that the proper law would be followed. Therefore, we need not opine on specific argument regarding Dr. Brams'

---

[2] Dr. Brams testified regarding self-defense, in part, in the context of Rice defending her children. While neither party raises the applicability of BWS as it applies to the defense of others, we note the lack of case law extending consideration of BWS to instances in which the defendant acted with a belief of danger to others, not present at the time of the incident.

15.

testimony, as we presume the trial court correctly considered only proper evidence in entering its verdict. *See Brinkman* at ¶ 32.

{¶ 33} Rice's remaining evidentiary challenge addresses prior conduct of C.F. under Evid.R. 404(B). While much of C.F.'s prior conduct was discussed in testimony, the trial court also excluded some evidence of C.F.'s prior conduct, under Evid.R. 404(B). As a result, the evidence included testimony regarding C.F.'s drug dealing and drinking and prior incidents in which C.F. threatened others, including Rice's testimony about a tattoo artist that C.F. threatened with a gun, causing the tattoo artist to flee with claims that C.F. was trying to rob him. The trial court excluded evidence of C.F.'s juvenile record and excluded testimony by Rice's daughter regarding C.F.'s heavy drinking. C.F.'s drinking, however, was otherwise acknowledged by C.F. in his own testimony and addressed in Rice's testimony, with evidence demonstrating that C.F. preferred vodka, he bought it by the case, and he often placed the vodka in sports drink bottles to consume it.

{¶ 34} The testimony clearly excluded by the trial court consisted of evidence of C.F.'s juvenile record. The trial court deemed this evidence inadmissible under Evid.R. 404(B), which provides:

> Evidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

In this case, Rice argues that the evidence would have demonstrated C.F. previously committed felonious assault while he was still a juvenile and Rice had knowledge of his violent past. We apply de novo review to the admissibility of other-acts evidence under

16.

Evid.R. 404(B), as a question of law. *State v. Worley,* 2021-Ohio-2207, ¶ 117, citing *State v. Hartman,* 2020-Ohio-4440, ¶ 22. Exclusion under Evid.R. 403(A), however, based on the probative value of the evidence being outweighed by unfair prejudice, is reviewed for an abuse of discretion. *Worley* at ¶ 124.

{¶ 35} Character evidence is precluded under Evid.R. 404(B), where the evidence is proffered to demonstrate a person has a propensity to act a certain way, but the evidence may be offered for a non-propensity purpose. *Worley* at ¶ 118. The proponent of the character evidence, however, must justify the admission of other acts evidence by demonstrating a non-propensity purpose pertaining to "a 'material' issue that is actually in dispute." *Worley* at ¶ 118, citing *Hartman* at ¶ 27, quoting *Huddleston v. United States,* 485 U.S. 681, 686 (1988). Otherwise admissible character evidence, however, may still be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." *Worley* at ¶ 124, quoting Evid.R. 403(A).

{¶ 36} The trial court extended great leeway to the defense in questioning C.F., permitting cross-examination of C.F. that probed accusations that C.F. set fire to a woman's car, pointed a gun at Rice's children, and caused the apartment fire at the Miracle Manor apartments. C.F. denied all accusations, and admitted only to verbal arguments and general, unspecific threats toward Rice as part of these arguments. C.F. denied any physical attack on Rice or her children, and Rice acknowledged in her testimony that C.F. never got physical with her or her children, with only rough sex cited as an example of physical abuse. C.F. admitted to having a protection order issued against

17.

him, for the mother of his children, and admitted he told Rice about the protection order. C.F. also did not dispute the evidence that indicated he had been drinking prior to the shooting, based on medical records noting the levels of alcohol in his system and police noting he smelled of alcohol at the scene.

{¶ 37} In challenging the trial court's ruling under Evid.R. 404(B), Rice notes that the trial court excluded evidence of C.F.'s juvenile record without stating any reasoning for the record. Specifically, Rice notes that "[t]he trial court's rulings in regard to Evid. R. 404(B) are somewhat confusing." In arguing prejudicial error, Rice suggests that the trial court improperly "decided himself off the record what evidence to consider or not consider." However, "'Crim.R. 23(C) only requires the court in a bench trial to make a general finding regarding its verdict,' and a trial court is not required to explain its reasoning. *State v. Kimble,* 2025-Ohio-310, ¶ 44 (6th Dist.), quoting *State v. Travis,* 2022-Ohio-1233, ¶ 20 (8th Dist.) (additional citation omitted.).

{¶ 38} In arguing a lack of any record as the basis to find error, Rice ignores that we are limited to the record in reviewing the trial court's evidentiary rulings to determine whether those rulings constituted prejudicial error. *See Morgan v. Eads,* 2004-Ohio-6110, ¶ 13 ("a bedrock principle of appellate practice in Ohio is that an appeals court is limited to the record of the proceedings at trial."). Here, the trial court prevented some testimony of C.F.'s drinking while permitting other evidence from other witnesses, but clearly precluded evidence of C.F.'s juvenile record. The record reveals nothing more regarding

18.

the trial court's exclusion of this evidence under Evid.R. 404(B), and Rice fails to provide a basis for her challenge on appeal, separate from deficiencies in the record.

{¶ 39} Rice did not ask for clarification of the trial court's reasoning to preserve any issue regarding the trial court's evidentiary rulings for appellate review. Rice, furthermore, points to nothing in the record that affirmatively demonstrates the trial court failed to consider only relevant, material, and competent evidence in entering its verdict. *See Brinkman,* 2022-Ohio-2550 at ¶ 32, citing *State v. Thomas,* 2022-Ohio-6624, ¶ 25-27. Therefore, considering the record, there is no basis to find error in the trial court's consideration of expert testimony or in the admission or exclusion of evidence under Evid.R. 404(B). Rice's first and second assignments of error challenging the trial court's evidentiary rulings, accordingly, are not well-taken.

## C. Manifest Weight

{¶ 40} In her third and final assignment of error, Rice argues the trial court's verdict was against the manifest weight of the evidence. Because the trial court entered conviction on the inferior offense of aggravated assault, Rice argues that this demonstrates the trial court applied an incorrect standard "for evaluating the self-defense claim in light of Dr. Brams' testimony." Rice argues that the trial court confused the "extreme provocation" necessary for aggravated assault with "the sort of subjective psychological state that battered women experience." Such an argument is speculative at best, because as previously noted, the trial court entered a general verdict pursuant to Crim.R. 23(C) and was not required to provide any reasoning to support its judgment.

19.

**{¶ 41}** Rice was charged with felonious assault, relative to the shooting of C.F., and asserted self-defense with expert testimony regarding BWS. The trial court entered a conviction on aggravated assault. The difference between felonious assault, as charged, and aggravated assault, as convicted, is the "additional mitigating element of serious provocation" necessary for the lesser or inferior offense of aggravated assault. *See State v. Deem,* 40 Ohio St.3d 205, 210-211 (1988).

**{¶ 42}** While Rice opted for a bench trial, she would have been entitled to a jury instruction on aggravated assault if the evidence supported conviction on felonious assault, as charged, but the evidence also supported a finding of serious provocation by the victim. *State v. Wimpey,* 2019-Ohio-4823, ¶ 14 (6th Dist.), citing *State v. Morrow,* 2002-Ohio-6527, ¶ 8 (2d Dist.), citing *Deem* at 210-211. "Felonious assault is reduced to aggravated assault if the offender is 'under the influence of sudden passion or in a sudden fit of rage * * * brought on by serious provocation occasioned by the victim.'" *Wimpey,* 2019-Ohio-4823 at ¶ 12, citing R.C. 2903.12(A); *Deem* at 210-211.In entering conviction on aggravated assault, the trial court implicitly rejected Rice's self-defense claim and found the state proved its case beyond a reasonable doubt, but also found Rice acted under the influence of sudden passion or in a sudden fit of rage. Therefore, we find no support for Rice's contention that the trial court confused the standard for evaluating self-defense based on a claim of BWS. While the legal theories for self-defense and aggravated assault are generally treated as incompatible when pursued simultaneously, because self-defense requires evidence of fear and aggravated assault requires evidence

20.

of rage, we have recognized that "a reasonable juror could find provocation and reject self-defense" where the record supports such a finding. *State v. Cronin,* 2010-Ohio-4717, ¶ 53 (6th Dist.); *see also Wimpey* at ¶ 19. Considering the record in this case, we do not find the trial court confused the standard for self-defense with BWS by finding provocation as a mitigating element, for purposes of entering judgment on aggravated assault.

{¶ 43} Rice asserted self-defense, with expert testimony of BWS, to the charged offense of felonious assault. To pursue self-defense, Rice had to demonstrate:

> (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.

*State v. Messenger*, 2022-Ohio-4562, quoting *State v. Barnes,* 94 Ohio St.3d 21, 24 (2002); *see also State v. Wilson,* 2024-Ohio-776, ¶ 20. As previously addressed, expert testimony of BWS was admitted to assist the trier of fact regarding the second element, Rice's bona fide belief of imminent danger of death or great bodily harm. *See Koss,* 49 Ohio St.3d at 217. "In evaluating the manifest weight challenge involving self-defense, we must review the entire record, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice with respect to its finding that the state disproved at least one of the elements of self-defense beyond a reasonable doubt." *State v. McClain,* 2025-Ohio-577, ¶ 22 (6th Dist.),

21.

citing *State v. Gibson,* 2023-Ohio-1640, ¶ 12 (1st Dist.), citing *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997).

{¶ 44} Dr. Brams testified regarding Rice's history and testified that Rice had been through cycles of violence in prior relationships and in her relationship with C.F., specifically. As to physical abuse from C.F., Dr. Brams noted instances in which C.F. forced Rice to engage in sexual relations, knowing he caused physical pain to Rice during the act. Rice acknowledged the sexual abuse in her testimony, but characterized the verbal incidents as the "blowups" that led to time apart before the cycle began anew. Otherwise, Rice testified that C.F. "never laid his hands" on her or her children.

{¶ 45} Dr. Brams also noted the psychological abuse C.F. inflicted on Rice, and the verbal and implied threats toward Rice's children, including the instance in which C.F. pointed a weapon at the head of Rice's child. Rice testified, however, that she did not perceive the pointed weapon as a threat at the time, expressing annoyance rather than fear, indicating she felt it should not be necessary to ask C.F. to refrain from pointing guns at her children.

{¶ 46} Dr. Brams testified that Rice has a history of abusive relationships, but the difference between prior relationships and her relationship with C.F. was the prior relationships were ended by the other person, and in the present, Rice was trying to end the relationship with C.F., adding to the tensions in the relationship with C.F. Additionally, Dr. Brams opined that Rice has learned, through her relationships, that "no matter what she does it is impossible to protect herself." However, while Rice has learned

22.

not to value herself and permit herself to be hurt, Rice is very protective of her children, and the attempted separation from C.F. resulted in threats to her children. Dr. Brams testified that C.F.'s threats to Rice's children, including the threat of shooting Rice's children in the kneecaps, combined with Rice's years of hypervigilance, terror, and fear, "was clearly the breaking point, that the violence of having her window kicked in, the violence of [C.F.] screaming and the threats to her children was just a situation in which she could not allow them to be damaged."

{¶ 47} Considering the entire record, including Rice's own testimony that C.F. never "laid his hands" on her or her children, and the recording of the shooting in which Rice threatens C.F. in a manner that could reasonably be construed as passion or rage, we do not find the trial court lost its way in determining the state met its burden of demonstrating Rice did not act out of bona fide fear. Moreover, the weight of credible evidence also supports the trial court's finding, in the alternative, that Rice acted under provocation by the victim's threat to herself and her children, for purposes of entering conviction on the inferior offense of aggravated assault. Rice's own testimony about her reaction to C.F. going after her children, if believed, supported this finding. Therefore, we find Rice's third assignment of error not well-taken.

23.

## V. Conclusion

**{¶ 48}** Finding substantial justice has been done, we affirm the judgment of the Lucas County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

                                                          Judgment affirmed.


        A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.              _____
                                                    JUDGE

Gene A. Zmuda, J.

                                             _____
Charles E. Sulek, P.J.                            JUDGE
CONCUR.

                                             _____
                                                    JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.